**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE:  AMERICAN MEDICAL SYSTEMS, INC.
       PELVIC REPAIR SYSTEMS
       PRODUCT LIABILITY LITIGATION       MDL No. 2325

----------------------------------------------------------------
THIS ORDER RELATES ONLY TO CIVIL ACTIONS:

**Elliott v. AMS, Inc.**       **2:14-cv-11870**
**Greenier v. AMS, Inc.**      **2:14-cv-28142**


**MEMORANDUM OPINION and ORDER**

Pending is the Motion to Enforce Protective Order and for Sanctions filed by non-parties Christopher Walker, M.D., and Chelly Exum.[1] Defendant American Medical Systems, Inc. ("AMS") filed a brief in opposition to the motion, to which the non-parties filed a reply. Accordingly, the issues are fully briefed. The undersigned finds no need for oral argument. For the reasons set forth below, the court **GRANTS** the motion, in part, as it relates to enforcing the Protective Order and quashing the subpoenas at issue, and **ORDERS** the following briefing schedule relating to Dr. Walker and Ms. Exum's request for sanctions in the form of attorney's fees.

I.   **Relevant Facts**

As set forth in the court's prior Memorandum Opinion and Order, (ECF No.  23), some Plaintiffs in this multidistrict litigation ("MDL") underwent surgeries to revise or

---

[1] ECF No. 36 in *Elliot v. AMS* and ECF No. 27 in *Greenier v. AMS*. For ease of reference, the remainder of the ECF citations in this Memorandum Opinion and Order will correspond to the *Greenier* case, although duplicate documents were filed in *Elliot*.

remove the AMS pelvic mesh products which are the subject of this MDL. These surgeries, which have been referred to as "corrective surgeries" or "explant surgeries" in this litigation, were often arranged and funded by third-party companies. In the course of investigating this element of damages – specifically, the cost and medical necessity of the corrective surgeries – AMS took the deposition of a non-party, Dr. Walker. Dr. Walker is a gynecologist who testified that he performed corrective surgeries on two Plaintiffs, Ms. Elliot and Ms. Greenier, whose surgeries were paid by third-party funding. In his deposition, Dr. Walker deferred some questions relating to the charges associated with the corrective surgeries to his Chief Financial Officer, Ms. Chelly Exum.

Thereafter, AMS filed a Notice of Issuance of Subpoena for the deposition of Ms. Exum. Dr. Walker and Ms. Exum responded with a combined Motion for Protective Order and Motion to Quash the Subpoena, arguing that Ms. Exum should not be compelled to sit for the examination and should instead be deposed in a "less intrusive, more cost-effective manner" by a deposition through written questions pursuant to Fed. R. Civ. P. 31. Ultimately, the court found that the cost and burden on Ms. Exum and her counsel would arguably be greater if she were deposed under Rule 31 as suggested. As was explained in the Protective Order, a Rule 31 deposition by written questions would still require Ms. Exum to appear in person and orally respond to counsel's pre-prepared questions posed to her by the court reporter. Thus, in this instance, the primary difference between a Rule 31 deposition and a Rule 30 deposition was the lost flexibility in questioning. Given that a Rule 31 deposition would not achieve the result desired by the non-parties, the court denied the motion to quash AMS's subpoena for a Rule 30 deposition. Nevertheless, the court agreed with Dr. Walker and Ms. Exum that the deposition should be limited in both scope and time. Therefore, the court granted the

Motion for Protective Order, in part. Using the topics of inquiry proposed by AMS, the following limitations were placed on Ms. Exum's deposition:

1.      The parties may take an oral deposition of Ms. Exum within the next **twenty-one (21) days** at a date, time, and location agreed to by Ms. Exum and the parties.

2.      The deposition shall last no longer than **two (2) hours**.

3.      The topics of inquiry shall be limited to:

a.  The number of corrective surgeries performed by Dr. Walker at Clermont Ambulatory Surgical Center;

b.  The amount Dr. Walker is paid for a corrective surgery when acting on behalf of Med/Surg Consultants, and the amount he is paid for a corrective surgery when acting on behalf of UroGyn Specialists;

c.  The names of the entities that pay Dr. Walker for corrective surgeries at Clermont Surgical Center;

d.  The amount Dr. Walker was paid for the corrective surgery performed on Ms. Greenier, and for the corrective surgery performed on Ms. Elliot. This area of inquiry shall include an explanation of the documentation previously supplied by Dr. Walker/Ms. Exum.

e. The amounts paid to Dr. Walker for corrective surgeries based on referrals from Surgical Assistance and any changes of those amounts over time;

f.  The amount Dr. Walker received from Broward Outpatient Medical Center to perform a history and physical examination on a female patient;

g.  Access to the Smart Sheet database by Dr. Walker or anyone in his employ or at his offices.

3

h.  The percentage of Med/Surg Consultants' patients receiving corrective surgery that came from out-of-state;

i.  Payments made by Dr. Walker to Surgical Assistance related to patients receiving corrective surgeries;

j.  Payments made to Dr. Walker for services provided to patients seeking corrective surgeries that were not made for performing surgery; and

k.  The number of employees/contractors at UroGyn Specialists.

(*Id.* at 10-11) ("the Protective Order") (emphasis in original).

On September 7, 2016, AMS took the deposition of Ms. Exum as permitted. (ECF No. 29-1 at 2-44). The deposition commenced at 1:58 p.m. and concluded at 3:36 p.m., twenty-two minutes shy of the two-hour deadline. Ms. Exum appeared for the deposition and responded to all inquiries, although she stated that she did not know the answers to some of AMS's questions. (*Id.*). Thereafter, on September 20, 2016, asserting that it needed to "fill in the gaps" of Ms. Exum's testimony, AMS filed a Notice of Issuance of Subpoena for a second deposition of Ms. Exum to occur on September 30, 2016 and Notice of Issuance of a subpoena *duces tecum* requesting Ms. Exum to produce copies of certain business checks and a list of the 32 insurance companies that are accepted in Dr. Walker's practice. (ECF Nos. 24, 25, and 29-1 at 70). Attached to the subpoena for deposition was a list of four questions purporting to be "Deposition by Written Questions Directed to Chelly Exum to Supplement Her Deposition Taken on September 7, 2016." (ECF No. 24 at 10-12). AMS offered that in lieu of her appearance at a second deposition, Ms. Exum could respond to the questions by email, along with a signed verification, by September 30, 2016. (ECF No. 29-1 at 70). Likewise, AMS stated that instead of Ms. Exum producing the requested documents in person, AMS would accept these documents

by mail if they were accompanied by a verification and were produced by September 30, 2016. (*Id.*).

Dr. Walker and Ms. Exum responded to the notices of issuance of subpoenas by filing the instant Motion to Enforce Protective Order and for Sanctions. Dr. Walker and Ms. Exum argue that the subpoenas for deposition and production of documents request discovery beyond the limits of the Protective Order; specifically, the subpoena for a second deposition of Ms. Exum seeks to exceed the two-hour time limit and obtain information outside of the stated topics of inquiry. Furthermore, Dr. Walker and Ms. Exum argue that the subpoenas are unreasonably cumulative, duplicative, unduly burdensome, and harassing. The non-parties point to the fact that the new inquiries do not relate to the explant surgeries that Dr. Walker performed on Ms. Elliot and Ms. Greenier, which AMS purported to be the basis for seeking this discovery. The non-parties suspect that AMS's intent in seeking further discovery from Ms. Exum is to build a case against Dr. Walker, not to investigate any of the plaintiffs' damage claims in these actions.

Notwithstanding their argument that the subpoenas are improper, Dr. Walker and Ms. Exum agreed to produce documents responsive to the first three requests stated in the subpoena *duces tecum*, if such documents are available and in their possession, custody, or control. (ECF No.  27 at 5). Therefore, the only issues remaining in dispute are the subpoena for the second deposition of Ms. Exum and Request Nos. 4 and 5 in the subpoena *duces tecum*. Dr. Walker and Ms. Exum seek an order enforcing the Protective Order and quashing the subpoena for deposition of Ms. Exum, limiting the subpoena *duces tecum* to Request Nos. 1-3, awarding Dr. Walker and Ms. Exum's attorney's fees expended in bringing this motion, and any other relief the Court deems just and proper. (*Id.* at 6).

In response, AMS contends that it served the additional subpoenas because Ms. Exum failed to provide complete answers in her deposition to the topics of inquiry outlined in the Protective Order. AMS argues that the Protective Order "specifically entitle[d] AMS" to information from Ms. Exum on the designated topics, and Ms. Exum failed to comply. (ECF No. 29 at 2). AMS asserts that the subpoenas for a second deposition of Ms. Exum and requesting documents do not run afoul of the Protective Order, because AMS agreed that Ms. Exum could respond to the subpoenas by mail and did not have to appear in person. Further, AMS suggests that the subpoenas are proper because the requested documents "should have been produced in the first place" or "are necessary because [Ms. Exum] was not prepared to answer certain questions." (*Id.* at 4). Finally, AMS states that the additional deposition questions "seek information relevant to AMS's defenses" and "are within the broad scope of permissible third-party discovery." (*Id.*). Therefore, AMS argues that the Motion to Enforce Protective Order and for Sanctions should be denied.

In their reply, Dr. Walker and Ms. Exum emphasize that the proposed second, supplementary deposition of Ms. Exum demands information relating to surgeries and payments outside of the scope of inquiry provided in the Protective Order, such as surgeries performed at other locations. Further, the non-parties underscore the fact that AMS does not allege that Ms. Exum refused to answer AMS's deposition questions. The non-parties contend that Ms. Exum responded to the best of her ability. Dr. Walker and Ms. Exum point out that the deposition was not taken pursuant to Rule 30(b)(6); accordingly, Ms. Exum had no duty to research her answers and provide complete information. Lastly, the non-parties argue that despite AMS's agreement that Ms. Exum is not required to appear for the second deposition in person, AMS is still obligated to

6

obtain leave of court before subpoenaing her for a second deposition and this subpoena should be quashed because AMS did not obtain such permission. Regarding the subpoena *duces tecum*, Dr. Walker and Ms. Exum note that the subpoena is directed at Ms. Exum, not Dr. Walker or any of the corporate entities whose business records are the subject of the subpoena. AMS has not established that the records requested are in the possession or control of Ms. Exum. Additionally, they argue that the subpoena *duces tecum*, like the subpoena for deposition, exceeds the scope of the Protective Order.

## II.   <u>Discussion</u>

The court agrees that the subpoenas directed to Ms. Exum should be quashed. In issuing these subpoenas, AMS either vastly misinterprets the court's prior Order, or deliberately seeks to violate it. (ECF No. 23). The Order was unambiguous. AMS was permitted to take one deposition of Ms. Exum, lasting no longer than two hours, concerning topics of inquiry specifically outlined in the Order. AMS's belief that the Protective Order guaranteed complete answers is mistaken. The Protective Order did not compel Ms. Exum to provide any specific information; rather, the Order placed limits on the scope of the questioning by AMS. Ms. Exum, as a fact witness, was only obligated to provide answers based on her personal knowledge; she was not required to prepare or educate herself on the topics of inquiry. *See, e.g., Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *5–6 (S.D. Ohio Apr. 13, 2006) (discussing the distinction between a fact witness and 30(b)(6) witness deposition).

Notably, Ms. Exum was not deposed as a Rule 30(b)(6) witness. Under Federal Rule of Civil Procedure 30(b)(6), a party can notice the deposition of a business entity, setting forth particular topics of inquiry, and the named entity must designate a person or persons who will provide testimony on its behalf. *Id.*; Fed. R. Civ. P. 30(b)(6). Under

Rule 30(b)(6), witnesses are required to educate themselves in advance of a deposition about the information reasonably known or available to the business organization, because the witnesses are answering on behalf of the entity, not as themselves, and their answers are binding on the organization. By contrast, a fact witness deposition serves a different purpose, imposes different obligations, and involves different ramifications. *See Smith*, 2006 WL 7276959, at *5. Of particular import here, a fact witness, like Ms. Exum, is not testifying on behalf of the business organization and, thus, has no duty to familiarize herself with the entity's knowledge, records, and position. *Id.*

In this case, Ms. Exum was indisputably noticed and deposed as a fact witness.[2] (ECF No. 18 at 4). There is no allegation that Ms. Exum failed to attend the deposition or refused to answer, which could be considered tantamount to failing to appear for the deposition. *See* Fed. R. Civ. P. 30(g). Instead, AMS's argument is that Ms. Exum did not know the answers to all of its questions and that the Protective Order somehow entitled AMS to that information from Ms. Exum. (ECF No. 29 at 2). As previously stated, that position mischaracterizes the Order.

Furthermore, not only is AMS's subpoena for Ms. Exum's deposition a violation of the court's Protective Order, as described above, but it likewise violates the MDL's deposition protocol and the Federal Rules of Civil Procedure. AMS did not seek leave to take a second deposition of Ms. Exum. Fed. R. Civ. P. 31(a)(2)(A)(ii). AMS's apparent agreement to accept Ms. Exum's responses in written, verified form, as opposed to in person, does not constitute an acceptable discovery method, nor does not it obviate the requirement that AMS seek leave to take an additional deposition of Ms. Exum. The court

---

[2] Also, to the extent that Ms. Exum's testimony was intended to supplement Dr. Walker's testimony, the Court notes that Dr. Walker was deposed as a fact witness as well. (ECF No. 13 at 4).

directs AMS's attention to its prior Order thoroughly detailing the procedure for depositions by written questions under Fed. R. Civ. P. 31. (ECF No. 23 at 8-9). As stated, Rule 31 would require Ms. Exum to appear in person and orally respond to counsel's written questions, which would be posed to her by the court reporter. Therefore, to the extent AMS intends to proceed under Rule 31, Ms. Exum would still be required to appear for the deposition. Fed. R. Civ. P. 31(a)(2)(A)(ii). On the other hand, if AMS attempts to serve interrogatories on Ms. Exum, that discovery method is not intended by the federal discovery rules to be used on a non-party. As a non-party witness, Ms. Exum is not required to respond to interrogatories. *See* Fed. R. Civ. P. 33 (allowing "a party [to] serve on any other party no more than 25 written interrogatories.").

As stated, the subpoena for deposition violates the Protective Order by demanding a second deposition of Ms. Exum and, for that reason alone, should be quashed. However, the supplemental deposition questions tendered by AMS provide a separate basis for quashal, as they introduce topics in addition to the clearly-defined areas of inquiry permitted by the Protective Order. (ECF No. 24 at 10-11). Considering that the Order incorporated the topics proposed by AMS, it is hard-pressed to add new subject matter now. Indeed, the purpose of the Protective Order was to allow one, limited deposition of Ms. Exum; it was not a springboard for multiple depositions and expanding areas of inquiry.

Regarding the subpoena *duces tecum*, AMS again attempts to circumvent the court's Protective Order with a second round of document discovery directed to Ms. Exum. As the non-parties point out, no foundation has been laid that Ms. Exum is the custodian of the requested records, or that she was asked to bring these documents to her deposition and failed to do so. Therefore, AMS has provided no basis to justify its attempt

9

to secure these documents from Ms. Exum via a second subpoena.

Finding that AMS violated the Protective Order entered in this case, the court turns to the issue of sanctions. Dr. Walker and Ms. Exum request reimbursement of the attorney's fees that they have expended in bringing the present motion. While the precise issue has not been decided in the Fourth Circuit, district courts within the Fourth Circuit have followed the majority rule that Rule 37(b) sanctions are available for violations of a Rule 26(c) protective order. *See, e.g., SAS Inst. Inc. v. World Programming Ltd.*, No. 5:10-CV-25-FL, 2014 WL 1760960, at *4 (E.D.N.C. May 1, 2014) (collecting cases). The sanctions available under Federal Rule of Civil Procedure 37(d) are those set forth in Rule 37(b)(2)(A)(i)-(vi). Furthermore, under Rules 37(b)(2)(C) and 37(d)(3), "instead of or in addition to" the more severe sanctions set forth in Rule 37(b)(2)(A), the court "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Accordingly, it is hereby **ORDERED** that non-parties Dr. Walker and Ms. Exum shall have **fourteen (14) days** in which to provide the court with an affidavit itemizing the fees and expenses incurred in preparing the Motion to Enforce Protective Order and for Sanctions, as well as any argument addressing the reasonableness of the requested award considering the factors contained in *Robinson v. Equifax Information Services, LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009). Failure to timely file the affidavit and supporting documentation shall result in a denial of fees and costs. AMS shall have **fourteen (14) days** thereafter to file a response in opposition to Dr. Walker and Ms. Exum's submissions. The response shall include any justification that would obviate against an award of expenses. Failure to file a response shall be deemed an admission of

or agreement with the representations and arguments of Dr. Walker and Ms. Exum. Dr. Walker and Ms. Exum shall have **seven (7) days** thereafter to file a reply memorandum. At the conclusion of the period allowed for briefing, the court shall either schedule a hearing, or simply rule on the request for reasonable fees and costs.

III.   <u>**Conclusion**</u>

Wherefore, the court **GRANTS**, **in part**, Dr. Walker and Ms. Exum's Motion to Enforce Protective Order and for Sanctions. The court **GRANTS** the motion to the extent that it seeks to quash the subpoena for deposition of Ms. Exum and Request Nos. 4 and 5 of the subpoena *duces tecum* issued to Ms. Exum. The court **ORDERS** that the parties may submit information relating to Dr. Walker and Ms. Exum's request for sanctions as outlined above.

The Clerk is instructed to provide a copy of this Memorandum Opinion and Order to counsel of record and to counsel for the non-parties, Christopher Walker, M.D., and Chelly Exum.

**ENTERED**: November 8, 2016

Cheryl A. Eifert
United States Magistrate Judge